## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **MORELLA CHARLERY** : | CIVIL ACTION |
| : | |
| **v.** : | |
| : | |
| **STX Rx, INC. and P.A.M.** : | |
| **d/b/a GOLDEN ROCK PHARMACY** : | NO. 2004-0065 |

-------------------------------------------

| | |
|---|---|
| **MORELLA CHARLERY** : | CIVIL ACTION |
| : | |
| **v.** : | |
| : | |
| **STX Rx, INC. and P.A.M.,** : | |
| **d/b/a GOLDEN ROCK PHARMACY** : | NO. 2005-0134 |

### MEMORANDUM OPINION

**Savage, J.**                                                                                    **September 8, 2011**

After a jury verdict in her favor, Morella Charlery seeks attorneys' fees from her former employer, STX Rx, Inc. ("STX"), pursuant to the fee shifting provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2. As the prevailing party in a gender discrimination action, Charlery claims she is entitled to $47,810[1] in attorneys' fees. STX does not dispute that Charlery is entitled to fees. However, it claims that her fee request is unreasonable because her counsel billed excessive hours pursuing frivolous claims, included improper and duplicative time entries, and charged too high a rate.

After a thorough review of the record, including the time recording sheets submitted by Charlery's counsel, we shall award plaintiff $14,625 in legal fees.

---

[1] In her original motion, Charlery requested $49,820. She reduced that number to $47,810 in her reply to STX's opposition motion.

## Background

Charlery sued STX and P.A.M. Inc. ("P.A.M") for gender discrimination under Title VII, claiming that she was terminated from her position as a pharmacy assistant because she was pregnant. In addition to her federal claims, she asserted that STX violated Title 10 and Title 24 of the Virgin Islands Civil Rights Act; wrongfully discharged her in violation of the Virgin Islands Wrongful Discharge Act ("WDA"); intentionally and negligently inflicted emotional distress upon her; and breached certain contractual representations with respect to her termination.

On January 11, 2010, STX and P.A.M. separately moved for summary judgment. On February 22, 2010, P.A.M.'s motion was granted, leaving STX as the sole remaining defendant. During oral argument on March 1, 2010, Charlery's counsel withdrew all claims against STX except those stated in Counts I and IV for discrimination under Title VII and for intentional infliction of emotional distress. Pursuant to an Order dated March 10, 2010, summary judgment was granted in STX's favor on all counts except Count I.

On March 22, 2010, a jury trial commenced on the gender discrimination claim against STX. The next day, on March 23, the jury returned a verdict in favor of Charlery and awarded her $312.50 in lost wages and $10,000 for pain and suffering.

Charlery now moves for an award of attorneys' fees.

## Legal Standard

A district court has discretion to award reasonable attorneys' fees to a prevailing party in a Title VII action. See 42 U.S.C. § 2000e-5(k); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 318 (3d Cir. 2006). The prevailing party bears the burden of demonstrating that the fee request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.

1990). In determining the amount of a reasonable fee, we conduct a two-part analysis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Rode,* 892 F.2d at 1183. First, we must assess whether the time spent was reasonable by reviewing the number of hours. *Rode,* 892 F.2d at 1183. Second, we must decide whether the attorney's hourly rate is reasonable. *Id.* Once these two numbers are established, they are multiplied to yield the lodestar, which is presumed to be a reasonable fee. *Id.* After the lodestar is established, the burden then shifts to the adverse party to demonstrate that it is unreasonable. *Id.*

A district court cannot decrease an award based on factors not raised by the adverse party. *Id.* (quoting *Bell v. United Princeton Prop., Inc.,* 884 F.2d 713 (3d Cir. 1989)). Objections must be specific. *See U.S. v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000). Once the adverse party objects to a fee request, we have considerable discretion to "adjust the fee award in light of those objections." *Rode,* 892 F2d at 1183.

### Discussion

<u>Hourly Rate</u>

A reasonable hourly rate is generally calculated using the prevailing market rate in the community for similar service by lawyers of "reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S 886, 896 n.11 (1984); *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). The prevailing party bears the initial burden of establishing that her requested hourly rates are in line with comparable market rates for legal services. *Smith*, 107 F.3d at 225.

In order to meet her *prima facie* burden, a plaintiff must produce "satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *Smith*, 107 F.3d at 226 n.2 (citations omitted). If she fails to do so, the district court "must exercise its discretion in fixing a reasonable hourly rate." *Washington v. Phila. Court of Common Pleas,* 89 F.3d 1031, 1036 (3d Cir. 1996) (quoting *Griffiths v. Cigna Corp.,* 77 F.3d 462 (3d Cir. 1996)).

Charlery has not satisfied her burden of establishing that her attorneys' billable rates were reasonable. In her fee petition, she requested hourly rates of $400 for Lee J. Rohn and $300 for Ryan Greene, the two attorneys who worked on the case.[2] However, the only evidence submitted by Charlery is Greene's affidavit in which he affirmed that he is "familiar with the fees customarily charged" in civil litigation matters in the Virgin Islands, and that "the fees charged by [his] Firm are fair and reasonable for work performed by the Firm on behalf of the Plaintiff." Greene based his opinion on his "knowledge of the customary hourly rate of Lee J. Rohn, Esq. and the rates charged by other attorneys licensed in this jurisdiction."

An attorney's own affidavit is not sufficient to support the reasonableness of an hourly rate. *See Holmes ex rel. Holmes v. Millcreek Twp. Sch. Dist.,* 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits."); *Kurschinske v. Meadville Forging Co.,* No. 06-87, 2008 WL 4462294, at *3 (W.D. Pa. Sept. 30, 2008) (same). He must provide "affidavits of other practitioners supportive of the requested hourly rate." *Kurschinske*, 2008 WL 4462294, at *3 (citing *Arietta v. City of Allentown,* No. 04-226, 2006 WL 2850571, at *4 (E.D. Pa. Sept. 29, 2006)). Here, Greene's self-serving affidavit is not sufficient to support the

---

[2] Rohn and Greene are lawyers with Rohn and Carpenter, LLC.

4

reasonableness of his billable rate. Nor is it sufficient to support Rohn's rate. Thus, we must exercise our discretion in determining a reasonable rate.[3] *Washington,* 89 F.3d at 1036.

Based upon the nature of Charlery's claims and the background, experience and reputation of her attorneys, we conclude that the appropriate hourly rate is $300 for Rohn and $150 for Greene.[4]

Hours Expended

A fee petition should include fairly detailed information for time devoted to various activities. *Rode*, 892 F.2d at 1190. Although "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted," a fee petition must be specific enough to determine if the hours claimed are unreasonable for the work performed. *Id.* (citations omitted). We must "decide whether the hours . . . were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Grp., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433-34). If we cannot determine whether a particular time entry is chargeable to the defendant, it must be excluded because the burden of proof rests with the prevailing party. *Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536, 543-44 (E.D. Pa. 1996) ("where we simply are not certain

---

[3] STX only objects to Rohn's hourly rate of $400. It contends that because this litigation commenced in 2004, in setting an appropriate rate, the court should look to what the comparable rate would have been during each particular year. *Def. Opp. Mot.,* p. 6. This argument is incorrect. In fee petitions, the proper billing rate to be used is the prevailing market rate at the time the request for fees is made. *Lanni v. New Jersey,* 259 F.3d 146, 149-50 (3d Cir. 2001).

[4] In *Wallace v. Kmart Corp.*, No. 02-107, Rohn filed an affidavit in which she stated that Ryan Greene, whom she had assigned to try the Charlery case, was "a relatively inexperienced associate." (Document No. 244, Exhibit 1, ¶ 17). Considering Greene is one of Rohn's associates, whom she knows best, we rely on her estimation of his experience in setting a reasonable rate.

whether a particular task is chargeable to [the defendant] or not, we have excluded it, because the burden of proof rests squarely with Plaintiffs.").

STX objects to several time entries. First, it objects to any time Charley's counsel spent on work involving P.A.M. In her reply to STX's objection to attorney's fees, Charley agreed to delete time entries for May 6 and May 7, 2005, involving claims against P.A.M. However, Charley did not address time entries dated May 27, 2005,[5] February 19, 2010 and February 20, 2010, each of which identified the work as done with respect to P.A.M.

In cases involving multiple parties, the Third Circuit has made clear that a "defendant should not be required to compensate a plaintiff for attorney hours devoted to the case against other defendants." *Rode*, 892 F.2d at 1185 (internal quotations and citations omitted). However, hours expended on claims against dismissed defendants are compensable "if [the] plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against the defendants over whom the plaintiff prevailed." *Id.* Charley has not presented any evidence that the claims against P.A.M. were "fairly devoted" to her claims against STX. Therefore, we will delete the entries from May 27, 2005, February 19, 2010 and February 20, 2010, totaling 1.3 hours.

Next, STX argues that in time entries from February 1, 2 and 3, 2010, Rohn and Greene billed time for reviewing the same documents. Thus, it contends that the time entries are duplicative and should be deleted.

Counsels' time entries from February 1, 2 and 3, 2010, are for work in responding to STX's motion for summary judgment. A plaintiff's response to a summary judgment

---

[5] The time entry dated 5/27/2005 states the following: "Prepare and file response to Court Order dated May 20, 2008." Considering counsel was responding to the Court's May 20, 2008 Order, we presume the correct date of this time entry is 5/27/2008 and not 5/27/2005.

motion is a crucial task in the course of litigation. Here, it appears that Rohn and Greene divided the tasks between them. We do not find this division of labor unreasonable or duplicative.

STX argues that Rohn's December 21, 2009[6] time entry for preparing for and participating in mediation should be deleted because she had supposedly transferred the case to Greene and she had previously reviewed the same documents she used in her preparation.

As discussed in footnote four, pursuant to a motion in Wallace v. Kmart, No. 02-107, Rohn stated that she had assigned the trial of Charley's case to her associate, Greene. She did not say that she relinquished all involvement in Charley's action. Thus, we do not deduct time that Rohn continued to work on the case after she had assigned the trial to her associate.

STX's claim that Rohn reviewed the same documents twice is not supported by the billing summary. Her entry states that she "[r]eview[ed] file including deposition testimony." There are no similar entries in the billing summary.

STX objects to 1.1 hours Greene billed on March 11, 2010. His time entry states: "Witness interview, Irmina Charley and notes regarding same. Draft trial questions regarding this witness for direct examination."[7] The fact that Irmina Charley did not testify at trial is not a ground for eliminating time preparing to present the witness. Counsel had to be prepared to present the witness. Developments at trial or beyond counsel's control

---

[6] STX objects to Rohn's time in preparing for mediation, but does not reference a specific date or billing entry. We assume that it is disputing Rohn's entry from December 21, 2009, as that is the only entry dealing with mediation.

[7] Irmina Charley is Charley's sister.

could have been a reason for not calling the witness.

STX contends that Greene's March 16, 2010[8] time entry should be deleted because it involves time spent arranging for Charley's travel to St Croix for trial. We agree that this time entry is improper. Greene's time arranging for Charley's travel is not a fee for legal services. It is a simple administrative task that was or should have been handled by a staff member or Charley herself, not a lawyer. Time for this task will be deleted.

STX objects to any time entries involving Charley's counsels' review of intra-office memoranda or for instructing staff. Because it failed to provide a basis for its objections, these time entries will not be deleted.

STX argues that it was redundant for Greene to meet with witness Gerard Christian on March 17 and March 20, 2010 to prepare for trial. Charley admits that Greene did meet with Christian twice, but contends that the meetings were "necessary to gather facts and secure his testimony." After reviewing Greene's time entries, we agree with STX that it was duplicative. Therefore, the time entry for March 17, 2010 will be deducted.

STX claims that Greene's time entries on March 18, 2010 and March 20, 2010 are duplicative because he reviews the same deposition transcripts. However, the time entries for these dates involve the review of different transcripts. Greene reviewed Tamyka Weekes's deposition transcript on March 18 and William Reynolds's transcript on March 20. Therefore, these entries will stand.

STX objected to time spent by Charley's counsel on "invoices." In her reply motion,

---

[8] In its opposition motion, STX asserts that it objects to a May 16, 2010 time entry. Because no time entry exists for this date, we assume that it intended to object to the March 16 entry.

Charlery agreed to eliminate entries for December 30, 2009[9] and January 12, 2010 because they involved time spent on invoices. However, Charlery did not address Rohn's time entry from February 19, 2009, which also billed time for an invoice. This last entry will not be allowed.

Charlery agreed to waive entries from March 13, 15, and 16, 2010, involving time spent in connection with filing motions to continue the trial date and to file a pretrial memorandum out of time. *Reply to Opp.,* ¶ 5. She also agreed to waive time incurred in connection with Daryl Brewer's affidavit.[10] Charlery overlooked a second time entry from March 16, 2010, involving time for drafting the motion to file the pretrial memorandum out of time. Because this time was not reasonably expended, we will not allow it.

Charlery also overlooked an entry from March 17, 2010 that involved both permissible time and time spent on a call to Daryl Brewster. Because Charlery's counsel uses block billing, we are unable to determine what percentage of the time is allocable to permissible tasks and what percentage was allocable to the call to Brewster.

Block billing is a common time-saving practice and may be upheld if there is a reasonable correlation between the various activities listed in a block and the time spent completing those tasks. *United States v. NCH Corp.,* Nos. 98-5268, 05-881, 2010 WL 3703756, at *4 (D. N.J. Sept. 10, 2010) (citations omitted); *Schlier v. Rice,* No. 04-1863,

---

[9] In Charlery's reply memorandum she waives time for reviewing invoices on December 30, 2010 and January 12, 2010. Because there is no billing entry for December 30, 2010, we assume Charlery meant to waive the billing entry on December 30, 2009 for: "Receipt and review Invoice regarding court reporting and mark for payment."

[10] On March 16, 2010, Charlery filed a motion for reconsideration of the Court's Order granting partial summary judgment in favor of STX. (Document No. 132). As an exhibit to her motion, she included an affidavit from Daryl Brewster, a former Assistant Manager at Golden Rock pharmacy. On March 23, 2010, Charlery's motion was denied. Thus, any attorney hours attributable to Charlery's motion for reconsideration were not reasonably expended.

2009 WL 5182164, at *6 (M.D. Pa. Dec. 22, 2009).  However, it is not the ideal time-keeping method and lawyers who use it do so at their "own peril." *Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *7 n.14 (W.D. Pa. Mar. 5, 2010).  If a block entry is confusing or makes it difficult to allocate reasonable time to a specific task, "the blame lies on the party seeking fees because they were in the best position to mitigate any confusion." *NCH Corp.*, 2010 WL 3703756, at *5.  In this case, we examine the block entry and approve time reasonably correlated to permissible tasks. *Id.*

Because the March 17, 2010 entry includes some tasks that are reimbursable, it would be inappropriate to delete the entire time.  However, because the block billing narrative makes it difficult to determine or estimate the portion of time allocated to each task, we "split the difference between the parties." *Id.* at *6.  Thus, for the March 17, 2010 entry, we will reduce the chargeable time from 3.7 hours to 1.8 hours.

<u>Adjustment to Lodestar</u>

After fixing the appropriate billing rates, deducting the hours voluntarily waived by Charley and eliminating the disallowed time, the proper lodestar amount is $24,375.  However, our analysis is not complete.  We must now consider whether to adjust the lodestar based on the results of the litigation.

A district court may adjust the lodestar downward based on the "results obtained." *Hensley,* 461 U.S. at 434.  In situations where a plaintiff asserts multiple claims but is only successful on some, her degree of success is a "crucial" factor. *Id.; Spencer,* 469 F.3d at 318.  In such cases, a court may only award fees for work done on the unsuccessful claims if they depend on the same facts or legal theories as the successful ones. *McKenna v. City of Phila.,* 582 F.3d 447, 457 (3d Cir. 2009).   Claims that are both unsuccessful and

unrelated to successful ones "'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" *Id.* at 455 (quoting *Hensley,* 461 U.S. at 434-35).

It is the plaintiff's burden to establish that time spent pursuing unsuccessful claims contributed to her success on other claims. *Id.* at 457-58. If a district court reduces hours based on a prevailing party's limited success, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, at 436. In either case, it should provide a clear and concise explanation for why it reduced the fee. *Id.* at 437.

STX argues that the lodestar should be reduced to account for Charlery's limited success in litigation. It contends that because Charlery brought several claims that had no legal support and which were unrelated to her Title VII claim, she should not be reimbursed for time spent on those claims. Charlery contends that because all of her claims were factually interrelated with her Title VII claim, she should be fully reimbursed.

At least two of Charlery's six claims against STX were frivolous or factually and legally distinct from her Title VII claim. In count two of her complaint, she alleged claims of gender discrimination under Title 10 and Title 24 of the Virgin Islands civil rights statutes. 10 V.I.C. §§ 1-10, 64; 24 V.I.C. § 451. Although chapter one of Title 10, 10 V.I.C. §§ 1-11, provides a private cause of action for certain forms of discrimination, it does not apply to discrimination on the basis of sex. *Miller v. V.I. Hous. Auth.,* No. 98-089, 2005 WL 1353395 *1 (D.V.I. June 3, 2005). Therefore, Charlery had no legal basis for her claim for sex discrimination under 10 V.I.C. §§ 1-10.

Only the Virgin Islands Civil Rights Commission can enforce 10 V.I.C. § 64 because the statute does not provide for a private cause of action. *See Speaks v. Gov't of the V.I.*,

No. 06-168, 2009 WL 167330, at *3-4 (D.V.I. Jan. 14, 2009) (holding that the Virgin Islands Legislature did not intend to create a personal right of action under chapter five of Title 10); *Miller*, 2005 WL 1353395, at *5 n.4 (overruling the court's prior decision in *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp. 2d 600 (D.V.I. 2003), and holding chapter five of Title 10 did not create a private cause of action). Nor is there a private cause of action pursuant to 24 V.I.C. § 451, the statue governing employment discrimination. *See Miller*, 2005 WL 1353395, at *5 ("[T]he Court agrees that if the Legislature had intended to create a private cause of action for pursuing relief from the discriminatory practices identified in 24 V.I.C. § 451 and 10 V.I.C. § 64, it should have done so 'in clear and unambiguous terms.'" (citations omitted)). Thus, Charley had no plausible claims under these statutes.

In count six of her amended complaint, Charlery requests punitive damages. This claim is frivolous because punitive damages do not constitute an independent cause of action. *See Speaks*, 2009 WL 167330, at *8 (dismissing count for punitive damages because punitive damages "cannot form a cause of action upon which a plaintiff would be entitled to relief."). Moreover, punitive damages are only available when a defendant's acts were outrageous, done with "evil motive or reckless indifference." *Berroyer v. Hertz,* 672 F.2d 334, 340 (3d Cir. 1982) (quoting R*ESTATEMENT (S*ECOND*) OF T*ORTS § 908(2) (1979)). Charlery provided no evidence to meet this standard. Because her claim in count six is frivolous, she is not entitled to recoup any attorneys' fees expended on this claim.

Based on the lack of a legal basis for her claims in counts two and six, and the undisputed absence of a factual basis for any claim against P.A.M.,[11] Charlery has not met

---

[11] P.A..M. owned and operated the Golden Rock Pharmacy, Charlery's place of employment, until it sold the store to STX in July of 2002. It is undisputed that STX, not P.A.M., was Charlery's employer at the time of the alleged discrimination. Charlery had no claim against P.A.M. and should never have

her burden of establishing that time spent pursuing these unsuccessful claims contributed to her success on the Title VII claim. Moreover, because her attorneys used block billing, we are unable to determine the specific hours allocated towards these claims. Thus, we will exercise our discretion to reduce the award to account for Charlery's limited success. *Id.* at 436.

Given our familiarity with this litigation, including participation in conferences, oral argument and trial, together with a thorough review of the pleadings and motions, and keeping in mind that there is "no simple balancing act" or "arithmetical formula" for reducing fees based on partial success, *see, e.g., Zebroski v. Gouak,* No. 09-1857, 2011 WL 3565223, at *2 (E.D. Pa. Aug. 12, 2011), we conclude that the lodestar should be reduced by 40 percent. This reduction reflects time spent by Charlery's counsel on counts two and six - both of which are frivolous and unrelated to the successful Title VII claim, and for any time spent pursuing claims against P.A.M.[12] Therefore, we will reduce the lodestar amount by $9,750 to $14,625.[13]

## Conclusion

In sum, after revising the hourly rate of Rohn to $300 and Green to $150, deleting

---

named it as a defendant in this case. Nevertheless, she waited until after P.A.M. filed a motion for summary judgment before conceding that it was not a proper party and voluntarily dismissing it from the case. (Document No. 105).

[12] We consider this 40 percent reduction in attorneys' fees modest in light of more severe reductions granted by other courts in this circuit. *See, e.g., Spencer v. Wal-Mart Stores, Inc.,* 469 F.3d 311 (3d Cir. 2006) (affirming 75 percent reduction in fees for partial success in disability discrimination case); *Zebroski,* 2001 WL 3565223 (reducing attorneys' fees by 55 percent for partial success).

[13] This number represents the sum of Attorney Rohn's adjusted time (16.1 hours x $300) and Attorney Greene's adjusted time (130.3 hours x $150), reduced by 40 percent for unsuccessful claims.

improper charges, and proportionally reducing the lodestar based on Charley's limited success, the motion for attorneys' fees will be granted and Charley will be awarded fees in the amount of $14,625.